Mr. Justice Scott delivered the opinion of the court. This was an appeal from a justice of the peace to the circuit court of Jackson county, where, upon a trial on the merits, judgment was for the original defendant, and the case is brought here on bill of exceptions to the overruling of a motion for a new trial. The matter of the infancy of the plaintiff, insisted upon here, is matter of abatement and not in bar of his suit; and having been adjudged against the defendant in the circuit court, his failure to rest upon that decision and his proceeding to a trial upon the merits exclude him now from this defence on well established principles of law. Nor can any question as to this matter be raised here for the additional reason that this ruling of the circuit court was not one of the grounds of the motion for a new trial which is alone before us for review. Nor is the second ground assumed here well taken, nor was it tenable in either of the courts below in any. stage of the proceeding; it having been settled by this court in the case of Hamilton vs. Buxton, (1 Eng. 24,) sustained in principle by the case oí McLain & Badgett vs. Carson’s ex., (4 Ark. 164,) that, under our statute, a party, having a cause of action against a firm of individuals on a partnership contract, may sue one or more of the partners at his election. The remaining position, that the plaintiff received from Lank-ford & Brown an order on the defendant for the $14, sought to be recovered, and did not return, but retained it, although acceptance and payment were refused, has more of plausibility. But when the whole of the testimony is considered, this fact is by no means of controling import, nor is the legal result by any means conclusive against the plaintiff’s rights in the premises. It is perfectly clear, from the testimony, that there was a contract of hiring between the plaintiff and the defendant. And, from facts and circumstances proven, both affirmatively and negatively, it is scarcely less clear that this contract was continued and was not abrogated by the arrangement of the defendant with Lank-ford & Brown. It is true that, after this arrangement, Lankford & Brown superintended and controled the labor of the plaintiff and received the benefit arising; but this was by no means inconsistent with a continuance of the contract between the plaintiff and the defendant. It is also true that Lankford “ considered the hands in his employ, and himself and Brown responsible to them for their pay;” but, at the same time, he testifies that, after the arrangement spoken of, the plaintiff and the other hands continued to work as before, and that “no new hiring or contract took place as he knows of. That he did not himself hire them or make any engagement with them,” and that, at the time of the making the arrangement, the defendant said in the presence of the plaintiff, that, “ when any of the hands wanted to quit, he would pay the orders that he (Lankford) and Brown would give them.” McElroy testifies to the same facts, and also that what was said by the defendant “about paying the hands wah in reply to what some of the hands said, that they would not work longer if Lankford was to pay them.” Isaac Burgen (the father of the plaintiff) testified that, having heard of the arrangement between the defendant and Lankford & Brown, and “knowing that (the latter) were not responsible, he went to the defendant and asked him how his son and the other boys were to get their pay, and that the defendant told him that he would see the boys paid.” And Brown, that, after the arrangement between the defendant and Lankford, which he subsequently went into as a partner of Lankford, the defendant told him that “he was still to see the hands paid, and that he would pay the orders which Lankford and the witness should give to the hands,” that the hands “ continued working,” and “that no other arrangement or contract was made by Lankford and the witness to pay the plaintiff than that made by the witness for the defendant,” in the first instance, as his authorized agent. The testimony, then, not only establishes a continuance of the contract of hiring between the plaintiff and the defendant, but shows clear enough that the office of the orders, that Lankford and Brown were to draw upon the defendant in favor of the hands, was simply that of a voucher to be used in a settlement between the defendant and Lankford & Brown, and that in that drawn in favor of the plaintiff he had no interest whatsoever further than as an exhibit to the defendant of the number of days he had worked under his contract. And it is fairly inferable from the testimony that the inducements for the defendant’s continuing the contract of hiring and remaining thereby himself responsible to the hands he had hired, was that, otherwise, Lankford and Brown, for want of credit, would have been unable to hire the necessary hands to carry out their undertaking: and the defendant, doubtless, contemplated that he would be safe in doing so, as the personal services of Lankford and Brown, for which he was not responsible, would fully compensate for any sharpness' of his bargain with them. If, then, it turned out that his bargain was too sharp, and that the per diem of the hands amounted to more money than the one dollar per tier for the timber, or, if he was so unwise as to pay off Lankford and Brown before he had paid off the hands, it was his own misfortune and voluntary act, of which he cannot legitimately complain either in this court or any other. Upon a view of the whole case, as presented in the record, we are of opinion that there is abundant testimony to authorize the recovery the plaintiff seeks, and little or none among the whole mass of relevant and irrelevant testimony to sustain the finding and judgment of the court. The court, therefore, erred in refusing the motion for a new trial, and the judgment must be reversed, a new trial awarded, and the cause remanded to be proceeded in.